IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02566-KAS

EMANUEL PITTMAN,

      Plaintiff,

v.

PICKETT, C/O,
FONTEROT, C/O,
PLATO, C/O,
CROSS, C/O,
MILES, C/O,
GONZALES, Sgt.,
WHITFIELD, Sgt.,
ROETHER, Capt.,
MOLELLO, C/O,
HEISMAN, Lt.,
CORDOVA, Major, and
JANE DOE, Nurse,

      Defendants.

_____

## ORDER

_____

## ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA

This matter is before the Court on Defendants' **Partial Motion to Dismiss** [#24][1]

(the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#26] in

_____

[1] "[#24]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must liberally construe the filings of a pro se litigant "so as to do justice." *See* Fed. R. Civ. P. 8(e); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, the Court may not "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997) (citing *Hall*, F.2d at 1110). Further, pro se litigants are subject to the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

opposition to the Motion [#24], and Defendants filed a Reply [#27]. The Court has reviewed the briefs, the entire case file, and the applicable law.[3] For the reasons set forth below, the Motion [#24] is **GRANTED**.

## I. Background[4]

Plaintiff is an incarcerated person with the Colorado Department of Corrections ("CDOC").[5] *Am. Compl.* [#10] at 2, 10. All Defendants were prison staff of CDOC at the time of the incident. *Id.* at 2-3, 7-8. In the present Motion [#24], Defendants Gonzales, Whitfield, Pickett, Fontenot, Plato, Cross, Miles, Heisman, Cordova, and Gomez seek dismissal of Plaintiff's excessive force claim against them.[6] *Motion* [#24] at 4. Further, Defendants Gonzales, Whitfield, Pickett, Fontenot, Plato, Cross, and Miles seek dismissal of the failure-to-intervene claim against them. *Id.* at 3. Defendants Molello and Roetker do not seek dismissal of the claims against them except to the extent Plaintiff seeks injunctive relief and seeks monetary damages from them in their official capacities. *Id.* at 1, 4-6.

The Amended Complaint [#10] indicates that all claims arise out of a single event, although the Court notes that the complaint is not a model of clarity regarding which

---

[3] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #18, #19]; *Reassignment* [#28].

[4] In determining whether an operative complaint states a claim for relief, the Court views the allegations in a light most favorable to the plaintiff, as the non-moving party. *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

[5] Plaintiff does not allege at which specific CDOC facility the events underlying this lawsuit occurred.

[6] Defendants state that "Fonterot, C/O" is spelled "Fontenot," "Roether, Capt." is spelled "Roetker" and "Jane Doe Nurse" is Nia Gomez. *Motion* [#24] at 1 n.1-3. Plaintiff does not object to these spelling corrections or the identification of "Jane Doe Nurse" and adopts these spellings/names in his Response. *See, e.g.*, *Response* [#26] at 2. Accordingly, the Court does so here as well.

parties were present during various points of the incident. On May 23, 2022, Plaintiff was approached by Defendants Gonzales and Gomez, who informed him that he must submit to a "TB shot."[7] *Am. Compl.* [#10] at 4. Plaintiff refused and informed them that he believed the shot would cause him to get sick. *Id.* After this exchange, Defendants Gonzales and Gomez left. *Id.* Defendants Gonzales and Heisman later came and told Plaintiff that he had to consent to the shot or else there would be a "force cell." *Id.* Plaintiff repeated his concerns that he believed the shot would cause him to become sick, requested to not be sprayed with oleoresin capsicum ("OC spray")[8] due to his asthma and informed them that he "don't care" about potentially being extracted from the cell. *Id.*

Approximately an hour later, Defendant Roetker arrived with a video camera, OC spray, and a "team in black."[9] *Id.* Defendant Roetker recorded Plaintiff saying that he believed the shot would cause him to become sick and that he was restricted from receiving OC spray due to his asthma and bronchitis. *Id.* Plaintiff alleges that all Defendants had access to his medical restrictions. *Id.* Plaintiff states that Defendant

---

[7] Plaintiff refers to the "TB shot" interchangeably as "TB test." *Am Compl.* [#10] at 4. Given the context, the Court interprets this to refer to a tuberculosis injection; however, the precise meanings of these terms do not materially impact the Court's adjudication of the Motion [#24].

[8] Defendants clarify Plaintiff's reference to "OC" as oleoresin capsicum. *Motion* [#24] at 2; *see Am. Compl.* [#10] at 4. Plaintiff does not object to this definition of OC in his Response. *Response* [#26] at 2. Accordingly, the Court adopts this definition here as well. *See also Gargan v. Gabriel*, 50 F. App'x 920, 922 (10th Cir. 2002) (noting that oleoresin capsicum is "commonly known as pepper spray").

[9] Plaintiff does not specifically state which Defendants were part of the "team in black." *See Am. Compl.* [#10]. However, from his Response [#26], the Court understands that Defendant Roetker's team in black included Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, and Molello. *Response* [#26] at 1-2, 12; *Am. Compl.* [#10] at 10.

Roetker provided the order to spray Plaintiff and that Defendant Molello then sprayed him.[10] *Id.*; *see Response* [#26] at 1-2.

Plaintiff asserts that all Defendants used excessive force against him in violation of his Eighth Amendment rights. *Am. Compl.* [#10] at 4. He is suing all Defendants in their individual and official capacities. *Id.* at 2-3, 7-8. Plaintiff also appears to assert a failure-to-intervene claim under the Eighth Amendment against Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, and Whitfield. *Id.* at 12. Both claims arise out of the single event during which Defendant Molello, at the order of Defendant Roetker, sprayed Plaintiff with OC spray in the presence of other Defendants. *Id.* at 4.

Plaintiff seeks both monetary and injunctive relief. *Am. Compl.* [#10] at 6. Plaintiff seeks millions of dollars in damages. *Id.* at 6, 14. Plaintiff does not specify whether this relief is sought in connection with his claims against Defendants in their official or individual capacities, and therefore the Court addresses the claims for monetary relief against Defendants in both capacities. *Id.* Plaintiff further seeks an injunction directing his transfer to an out-of-state prison. *Id.* Plaintiff reasons that this relief is necessary because three unidentified prison facilities have all "violated" him. *Id.*

## II.  Standard of Review

### A.      Fed. R. Civ. P. 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th

---

[10] In the Amended Complaint [#10], Plaintiff states "They spray my eyes, mouth & my nose." *Am. Compl.* [#10] at 2. In the Response [#26], Plaintiff clarifies that Defendant Molello was the only Defendant to physically administer the OC spray. *Response* [#26] at 2. As noted above, neither Defendant Roetker nor Defendant Molello are seeking dismissal of Plaintiff's claims against them, except to the extent that Plaintiff seeks injunctive relief and seeks monetary damages from them in their official capacities.

1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys. v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507 (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272,

1275 (10th Cir. 1997)). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment[.]" *SK Fin. SA*, 126 F.3d at 1275. "In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff*, 65 F.4th at 507 (citing *Holt*, 46 F.3d at 1003).

## B.    Fed. R. Civ. P. 12(b)(6)

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). For a pleading to survive a motion to dismiss, the plaintiff must have pled facts which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). In addition, the factual allegations must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S at 678.

## III. Analysis

## A.    Official Capacity Claims

Pursuant to the Eleventh Amendment, Defendants request dismissal of Plaintiff's claims against them for lack of subject matter jurisdiction to the extent the claims are asserted against them in their official capacities seeking monetary damages. *Motion* [#24]

at 5-6. The Court agrees with their argument and, in addition, notes that Plaintiff's request for declaratory relief and injunctive relief against Defendants in their official capacities is also barred by the Eleventh Amendment, for the reasons stated below.

Suits against persons in their official capacities are to be treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In other words, the interested party is not the named official but rather the governmental entity of which the defendant is an officer or agent. *Id.* Thus, the immunities available to persons sued in their official capacities are those possessed by the governmental entity. *Id.*

Regarding damages, "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). Section 1983 does not abrogate a State's Eleventh Amendment immunity. *Id.* at 169 n.17. Here, Plaintiff has not directed the Court's attention to, and the Court is not independently aware of, an applicable "waiver by the State or valid congressional override" of state sovereign immunity. *See id.* at 169. Thus, Plaintiff's claims seeking monetary damages against Defendants in their official capacities must be dismissed without prejudice based on lack of subject matter jurisdiction.

Regarding declaratory relief, Plaintiff states that he seeks a "declaration that the acts & omissions described herein violated his rights under the Constitution & laws of the United States." *Am. Compl.* [#10] at 6. *Ex parte Young* provides a narrow exception to the general rule that the Eleventh Amendment bars declaratory relief against state officials in their official capacities. *McGoffney v. Rahaman*, No. 23-1060, 2023 WL 6890917, at *4

(10th Cir. Oct. 19, 2023). Relief may be obtained when a plaintiff alleges "an ongoing violation of federal law" and only "seek[s] relief properly characterized as prospective." *Chilcoat v. San Juan County*, 41 F.4th 1196, 1213-15 (10th Cir. 2022) (citation omitted). "*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Id.* (citation omitted). Here, Plaintiff does not seek declaratory relief properly characterized as prospective; rather, he only seeks a declaration that his rights were violated in the past. Thus, Plaintiff's claims seeking declaratory relief against Defendants in their official capacities must be dismissed without prejudice based on a lack of subject matter jurisdiction.

Regarding injunctive relief, Plaintiffs seeks an order requiring him to be moved "to a[n] out of state prison because the new prison has violated me as well [as] all 3 prison[s] sent to" [sic]." *Am. Compl.* [#10] at 6. As with requests for declaratory relief against officers in their official capacities, Eleventh Amendment sovereign immunity bars injunctive relief unless predicated on the *Ex parte Young* exception for a plaintiff who alleges an ongoing violation of federal law and who seeks relief properly characterized as prospective. *Chilcoat*, 41 F.4th at 1213-14. Here, Plaintiff seeks relief which may be properly characterized as prospective, i.e., a move to an out-of-state prison facility. *Am. Compl.* [#10] at 6. However, the Amended Complaint [#10] contains no allegations of a continuing controversy arising from an ongoing failure by Defendants to follow the rules. The alleged event underlying this lawsuit was a discrete incident occurring on one day, May 23, 2022. There is no indication that Defendants are engaging in repeated violation of Plaintiff's constitutional rights along the lines of what is alleged here. Similarly, although Plaintiff states that his rights have been violated at three different facilities in which he has been

incarcerated, he provides no details explaining that his rights have repeatedly been violated in ways that are similar to what has been alleged here. Thus, because Plaintiff has failed to allege an ongoing violation of federal law, his claims seeking injunctive relief against Defendants in their official capacities must be dismissed without prejudice based on a lack of subject matter jurisdiction.

Accordingly, Plaintiff's claims against Defendants in their official capacities are **dismissed without prejudice** based on Eleventh Amendment immunity. *See, e.g.*, *Martinez v. Martinez*, 62 F. App'x 309, 314-15 (10th Cir. 2003) (stating that claims dismissed for lack of jurisdiction must be dismissed without prejudice) (citing *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (holding that the lower court's jurisdictional ruling, which did not address the claim's merits, should have been dismissed without prejudice), *cert. denied*, 537 U.S. 1088 (2002)).

**B.     Individual Capacity Claims**

      **1.     Declaratory and Injunctive Relief**

To the extent that Plaintiff may be attempting to sue Defendants in their individual capacities for declaratory and/or injunctive relief, his claims must fail. "Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief." *Chilcoat*, 41 F.4th at 1214.

Accordingly, Plaintiff's claims against Defendants in their individual capacities seeking declaratory and/or injunctive relief are **dismissed with prejudice**. *See, e.g.*, *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990) (holding that dismissal with prejudice is appropriate where the plaintiff could not correct the defect in the claim by filing an amended complaint).

**2.      Monetary Relief**

With the exception of Defendants Molello and Roetker, Defendants assert the affirmative defense of qualified immunity. *Motion* [#24] at 13. Qualified immunity protects defendant officials from monetary damages when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). This affirmative defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant asserts qualified immunity at the motion to dismiss stage, the burden shifts to the plaintiff to show that the defendant's conduct, as alleged in the complaint, (1) violated a constitutional or statutory right that was clearly established at the time of the conduct, and (2) the constitutional or statutory right would have been known to a reasonable person in the defendant official's position. *Harlow*, 457 U.S. at 818. "[C]learly established law must be 'particularized' to the facts of the case" and should not be defined "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). If the plaintiff fails to demonstrate either requirement, the court must grant the defendant qualified immunity and need not undertake additional analysis. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

**a.      Excessive Force**

Plaintiff's excessive force claim is asserted against all Defendants. As previously noted, Defendants Molello and Roetker do not seek dismissal of this claim against them to the extent Plaintiff seeks monetary damages.

The remaining Defendants, Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, Heisman, Cordova, and Gomez, all seek dismissal of this claim, arguing that Plaintiff has failed to allege their personal participation in the alleged use of force by

Defendant Molello, as allegedly ordered by Defendant Roetker. They assert this on the basis that they were either not present at the incident, did not order the use of force, and/or did not actually participate in the alleged use of force. *Motion* [#24] at 7-10. Plaintiff responds that they are all liable for the excessive force because Defendant Molello could not have proceeded to use force without his team as back-up, because they could have stopped the use of force by checking the computer to see that Plaintiff was OC restricted, or they had to approve the use of force based on the chain of command. *Response* [#26] at 1-3.

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Under the Eighth Amendment, "[a]n excessive-force claim has two elements: (1) an objective element requiring that the alleged wrongdoing be harmful enough to establish a constitutional violation; and (2) a subjective element requiring the plaintiff to show that the officials acted with a sufficiently culpable state of mind." *Ezell v. Hininger*, No. 23-7007, 2024 WL 1109057, at *2 (10th Cir. Mar. 14, 2024) (citing *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)). "An official's state of mind is sufficiently culpable 'if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Redmond*, 882 F.3d at 936) (internal quotation marks omitted). Here, Defendants have not contested that Plaintiff has adequately alleged the first, objective element of this claim.

Before turning to the details of Plaintiff's allegations against each Defendant, the Court notes that the use of OC/pepper spray is not per se unconstitutional. "The use of pepper spray 'constitutes a significant degree of force' and can in certain cases form the

basis of a constitutional violation." *Quinones v. Rollison*, No. 18 Civ. 1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010)). However, in many instances, the use of OC spray is permissible to coerce compliance with lawful orders. *Compare Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007) (holding that the officers' use of pepper  spray was not unreasonable where the plaintiff refused to obey repeated officer instructions to exit her car during a fifty-minute standoff) *and Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) (finding that a prison official's use of pepper spray to subdue the prisoner-plaintiff during an altercation with another prisoner did not amount to an excessive force claim) *with DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (stating that a prison official would act maliciously and sadistically by indiscriminately spraying pepper spray along a prison tier as a practical joke); *see also Lehman v. McKinnon*, No. 18-cv-00952-PAB-NRN, 2020 WL 6119537, at *4 (D. Colo. July 7, 2020) (collecting pepper spray cases in the Eighth Amendment context).

Regarding Defendant Cordova, Plaintiff states that he held the rank of major and was a supervisor over captains, lieutenants, sergeants, and correctional officers at the prison. *Am. Compl.* [#10] at 8. Plaintiff alleges that he was "the one in charge of the assembly of this team" and that "without his approval this would [have] never happened." *Id.* at 11. Plaintiff states that Defendant Cordova "had available info on the computer & still gave approval for this team to use OC" on him, "a prisoner with breathing issues." *Id.*

Regarding Defendant Heisman, Plaintiff states that he held the rank of lieutenant and was a supervisor over sergeants and correctional officers. *Id.* at 8. Plaintiff states that he came to the cell with either Defendant Gonzales or Defendant Whitfield, and

Defendant Heisman asked, "why are you rebelling against everything, they going to get this test with your permission or a force cell." *Id.* at 4. Plaintiff explained to them, "I think that shit makes me sick, not taking it, & as long as you don't OC me I got asthma I don't care." *Id.* at 4, 11. Plaintiff further alleges that Defendant Heisman "had available info on the computer about me being OC restricted & had a moral obligation to pass this info on to Capt. Roetker," but that he ignored Plaintiff, thus violating CDOC policy. *Id.* at 11.

Regarding Defendant Gomez, Plaintiff states that she was medical staff holding the title of nurse. *Id.* at 8. Plaintiff alleges that she "had all available access to the full scope of all my medical files & history," but "[e]ven with this info, Nurse made a conscious decision to not relay the info to this cell extraction team." *Id.* at 11. Further, Plaintiff states that he told her "in front of either Sgt. Gonzales or Sgt. Whitfield" that he had asthma. *Id.* He said he again told her that he had asthma when the team was assembled in front of his cell. *Id.* He asserts that "[t]here can be no excuse for this Nurse to let this CDOC policy be violated & they use OC on me." *Id.*

Regarding Defendant Whitfield, Plaintiff states that he held the rank of sergeant and was a supervisor over correctional officers. *Id.* at 8. Plaintiff alleges that he "either was in black at which case heard me say had asthma. Or was with the Nurse when I said I have asthma." *Id.* at 12. Plaintiff states that, "[e]ither way, this defendant had a moral obligation to go check the computer to see if I was OC restricted" and that, "[b]y not doing so violating CDOC policy to not use OC on prisoners with breathing issues." *Id.*

Regarding Defendant Gonzales, Plaintiff states that he held the rank of sergeant and was "[s]taff at prison in charge of people safety." *Id.* at 7. Plaintiff alleges that he "had available info on the computer about me being OC restricted giving them a moral

- 13 -

obligation to follow CDOC policy & not use OC on me." *Id.* at 10. He asserts that he "told this defendant either with the Nurse & Lt. present or in front of the cell in black" that he had asthma, but that Defendant Gonzales ignored him. *Id.*

Regarding Defendants Pickett, Fontenot, Plato, Cross, and Miles, Plaintiff asserts that each held the rank of correctional officer. *Id.* at 2-3, 7. Plaintiff alleges that all five "had available info on the computer about me being OC restricted giving them a moral obligation to follow CDOC policy & not use OC on me." *Id.* at 9-10. Plaintiff further alleges that he told all of them "in front of the cell" that he had asthma. *Id.*

In *Gargan v. Gabriel*, 50 F. App'x 920, 923 (10th Cir. 2002), the Tenth Circuit Court of Appeals held in an unpublished case that the use of four cans of OC spray on a prisoner who was unarmed, alone, and secure in a segregation cell during a cell extraction by defendants who had knowledge of the plaintiff's medical condition, i.e., chronic heart disease, did not constitute a violation of his Eighth Amendment right to be free from excessive force. The Circuit Court stated that, "[i]n order to state a claim for excessive use of force, [the plaintiff] must show the defendants 'acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline.'" *Gargan*, 50 F. App'x at 923 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996)). The Circuit Court further noted that "[t]his standard is appropriate 'regardless of whether the corrections officers are quelling a prison disturbance or merely trying to maintain order.'" *Id.* (quoting *Mitchell*, 80 F.3d at 1440 (quotation marks and citation omitted)). In affirming the district court's holding that the plaintiff had failed to state a claim based on use of excessive force, the Circuit Court observed that "[n]owhere does the complaint allege facts sufficient to support a reliable

inference that pepper spray was used on [the plaintiff] unnecessarily, excessively, or wantonly. There are simply no facts at all discussing the need, or lack thereof, to use pepper spray in extracting [the plaintiff] from his cell." *Id.*

"To determine whether prison officials applied force maliciously and sadistically or, rather, in good faith, [the Court] consider[s] (1) the need for the force, and (2) whether the officers used a disproportionate amount of force." *Redmond*, 882 F.3d at 937. Here, there was a clear need for force given that Plaintiff was refusing to obey orders and essentially told officers that they would have to do a force cell. *See Am. Compl.* [#10] at 4. "[P]risoners cannot be permitted to decide which orders they will obey, and when they will obey them." *Redmond*, 882 F.3d at 938 (citation and internal quotation marks omitted). In fact, Plaintiff does not take issue with the cell extraction itself in his Amended Complaint [#10]. *See* [#10] at 4, 9.

Rather, Plaintiff asserts that the force used to perform the cell extraction was excessive because Defendants used OC spray on him despite his diagnosed asthma and bronchitis. *See id.* Thus, he appears to argue that the officers used a disproportionate amount of force. *See id.* However, particularly considering *Gargon*, the Court can reasonably deduce that the moving Defendants, i.e., all those other than Defendants Molello and Roetker, despite allegedly having access to Plaintiff's medical records and despite allegedly being present for the use of the OC spray during the cell extraction, did not violate Plaintiff's constitutional rights, especially where none directly used or ordered this force to be used against Plaintiff. *See Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (citing *Bletz v. Gribble*, 641 F.3d 743, 754 (6th Cir. 2011) ("[A] police officer may be responsible for another officer's use of excessive force if the officer . . .

*actively* participated in the use of excessive force." (quotations omitted) (emphasis added)). This finding similarly applies with even more force to the moving Defendants who allegedly had access to the prisoner's medical records but who were *not* present for the use of the OC spray during the cell extraction. *See id.* In short, the Court is persuaded that Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, Heisman, Cordova, and Gomez did not maliciously and sadistically engage in excessive force. *See Redmond*, 882 F.3d at 936 (noting that an official's state of mind is sufficiently culpable only "if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline") (internal quotation marks and citation omitted).

However, even assuming that Plaintiff had adequately alleged an excessive force claim, the Court finds that his claim against these Defendants fails on the second prong of the qualified immunity analysis, i.e., on whether there was a clearly established statutory or constitutional right that was violated on May 23, 2022, the date of the cell extraction. *Am. Compl.* [#10] at 4. "To establish that the law was clearly established . . . , the plaintiff must point to Supreme Court or [published] Tenth Circuit precedents [o]n point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains." *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022); *George v. Beaver County*, 32 F.4th 1246, 1258 (10th Cir. 2022) (noting that the right must be clearly established "in light of the specific context of the case, not as a broad general proposition") (internal quotation marks and citation omitted).

Defendants here argue that they have been unable to locate "any Supreme Court or Tenth Circuit authority clearly establishing [Plaintiff's] right to [an investigation by

consulting an available computer database] prior to the use of OC spray." *Motion* [#24] at 14. Plaintiff has not directed the Court's attention to one, and the Court has independently been unable to locate such a case clearly establishing this right, particularly with respect to persons who did not actually use the spray or directly order the use of the spray.

Although it may not be used to demonstrate a clearly established right, given that it is not Supreme Court, published Tenth Circuit, or other circuit court precedent, the Court finds *Ross v. Willis*, No. 16 Civ. 6704 (PAE) (KNF), 2021 WL 3500163 (S.D.N.Y. Aug. 9, 2021), to be generally instructive given the largely analogous facts. In *Ross*, an inmate with asthma refused to leave his cell for a court appearance, and a team of officers used OC spray on him during the subsequent forced cell extraction. *Ross*, 2021 WL 3500163, at *3-5. The plaintiff's theory was that "'a reasonable officer should have known about [the plaintiff's] medical condition before using [OC spray] on him" because "DOC policies . . . required officers to check an inmate's contraindications prior to deploying chemical agent in non-emergency anticipated-use-of-force scenarios.'" *Ross*, 2021 WL 3500163, at *19 (citation omitted). The court states that the plaintiff's "claim thus effectively treats the DOC policies as coextensive with his § 1983 claim for deliberate indifference, such that failure to comply with the policy establishes the requisite knowledge on [the defendant-officer's] part," and because the officer "failed to comply with the policies and thereby was unaware of [the plaintiff's] particular medical vulnerabilities, . . . his decision to pepper spray [the plaintiff] was objectively reckless and a violation of [the plaintiff's] clearly established statutory or constitutional rights." *Id.* The court held that "[t]he DOC policies on which this argument rests, however, do not provide [the plaintiff] with a clearly established statutory or constitutional right." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) ("[A]

prison regulation primarily designed to guide correctional officials in the administration of a prison" is "not designed to confer rights on inmates.")). The court noted that the plaintiff had "not cited a clearly established constitutional or statutory right to have an officer in the circumstances presented ascertain the inmate's medical profile before commencing pepper-spraying," and therefore that the defendant-officer was entitled to qualified immunity. *Id.*

The circumstances of *Ross* are slightly different than those here, as the plaintiff there did not inform officers of his asthma prior to use of the OC spray on him, while Plaintiff here states that he told them beforehand. *Am. Compl.* [#10] at 9-12. Nevertheless, here, as in *Ross*, Plaintiff has not cited a clearly established constitutional or statutory right to have the officers in these circumstances ascertain Plaintiff's medical profile before commencing the use of OC spray. Thus, Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, Heisman, Cordova, and Gomez are entitled to qualified immunity.

Accordingly, the Motion [#24] is **granted in part**, and Plaintiff's excessive force claim against Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, Heisman, Cordova, and Gomez in their individual capacities seeking monetary relief is **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### b.    Failure to Intervene

Although not identified as such, Plaintiff appears to assert a separate claim that Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, and Whitfield failed to

intercede in the use of force by Defendant Molello. *Am. Compl.* [#10] at 12 (stating that these Defendants, "instead of breaking the chain to go find out about my claim of asthma, stood still & enable[d] Molello to assault me with OC. This makes them just as liable as if they had spray[ed] me themselves.").

"[A] prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Thus, "even when a jail employee does not himself use excessive force, he may be liable for failure to intervene when he is present at the scene and . . . fails to take reasonable steps to protect the victim of another office's use of excessive force." *Scriven v. Corby*, No. CV-03110-JAR-KKG, 2021 WL 2222682, at *10 (D. Kan. June 2, 2021) (internal quotation marks omitted) (quoting *Mascorro v. Billings*, 656 F3d. 1198, 1204 n.5 (10th Cir. 2011)). In order to state this type of claim, the plaintiff must adequately allege that the defendant-officer "(1) observed a constitutional violation and (2) had a realistic opportunity to intervene." *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1372 (D. Colo. 2021) (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). Allegations of officers' "mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers" is insufficient to state a claim for failure to intervene. *Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012)).

Here, Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, and Whitfield argue that Plaintiff has not adequately alleged that they "had sufficient time or opportunity to intercede in the alleged use of excessive force by [Defendant] Molello." *Motion* [#24] at 10. Plaintiff does not allege that any of these Defendants actually knew that he had

medically-diagnosed asthma or that there was a medical restriction in Plaintiff's online computer file restricting the use of OC spray on him; rather, he believes that they should have taken his word for it when he told them after the team was assembled outside his cell, made Defendants Molello and Roetker stop what they were doing, and gone to check the computer file. *Am. Compl.* [#10] at 9-12. Indeed, taking Plaintiff's statements at face value, this may have been a prudent course of action; however, a lack of prudence does not, by itself, support an Eighth Amendment violation. *See, e.g.*, *Mosay v. Wall*, No. 13-cv-841-wmc, 2015 WL 128076, at *7 (W.D. Wisc. Jan. 8, 2015) (noting that, "[w]hile it may well have been more  prudent for the correctional officers to have [taken a particular course of action] . . . , 'the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only [to] that narrow class of deprivations involving serious injury inflicted by prison officials acting with a culpable state of mind.'" (citation omitted)). Nevertheless, as these Defendants state, "the Amended Complaint is entirely silent as to the amount of time that passed from [Plaintiff] announcing that he was an OC-restricted asthmatic, to Roetker ordering the use of OC spray, to Molello administering the spray." *Motion* [#24] at 11. "Likewise, the Amended Complaint is silent as to the amount of time Molello actively dispensed OC spray into [Plaintiff's] cell." *Id.* The Court agrees that there is simply not enough alleged here to demonstrate that there was enough time for these Defendants to intervene to stop Defendants Molello's and Roetker's alleged use of excessive force on Plaintiff. *See, e.g.*, *Sexton v. Faris*, No. 22-cv-1927-WJM-MEH, 2023 WL 5671492, at *9 (D. Colo. Sept. 1, 2023) (noting absence of nonconclusory allegations regarding the defendant supervisors' opportunity to intervene).

However, even assuming that Plaintiff had alleged enough here for this claim to survive against these Defendants, Plaintiff has not directed the Court's attention to, and the Court has independently been unable to locate, a case clearly establishing the right to have these Defendants intervene to stop the use of force in this context, where the use of OC spray can in certain cases form the basis of a constitutional violation, where the inmate was non-compliant with officer directives, and where there was no clearly established independent duty for officers not administering the force to check computer files for inmate medical restrictions. Thus, the Court finds that Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, and Whitfield are entitled to qualified immunity.

Accordingly, the Motion [#24] is **granted in part**, and Plaintiff's failure-to-intervene claim against Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, and Whitfield in their individual capacities seeking monetary relief is **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that Defendants' Motion [#24] is **GRANTED**. Plaintiff's claims against Defendants Pickett, Fontenot, Plato, Cross, Miles, Gonzales, Whitfield, Heisman, Cordova, and Gomez (as "Jane Doe, Nurse") are **DISMISSED with prejudice in part and without prejudice in part**, as outlined above. The Clerk of Court shall **remove** these names from the electronic docket.

IT IS FURTHER **ORDERED** that Plaintiff's excessive force claim against Defendants Molello and Roetker is **DISMISSED without prejudice in part** to the extent Plaintiff seeks declaratory and injunctive relief.[11]

IT IS FURTHER **ORDERED** that the Clerk of Court shall correct the spelling of Defendant "Roether, Capt." on the electronic docket to Defendant "Roetker, Capt."

Dated: March 22, 2024                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[11] Plaintiff's Eighth Amendment excessive force claim against Defendants Roetker and Molello in their individual capacities for monetary damages remains in this lawsuit.