IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02566-KAS

EMANUEL PITTMAN,

    Plaintiff,

v.

ROETKER, Capt., and
MOLELLO, C/O,

    Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendants' **Motion for Summary Judgment** [#59][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#63] in opposition to the Motion [#59], Defendants filed a Reply [#64], and Plaintiff filed a

---

[1] "[#59]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must liberally construe the filings of a pro se litigant "so as to do justice." *See* Fed. R. Civ. P. 8(e); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, the Court may not "construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997) (citing *Hall*, F.2d at 1110). Further, pro se litigants are subject to the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Surreply [#65].[3] The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#59] is **GRANTED**.[4]

## I. Background

Plaintiff is incarcerated with the Colorado Department of Corrections ("CDOC"). Both Defendants were CDOC prison staff at the time of the incident.

According to the undisputed summary judgment evidence,[5] Plaintiff has been "on and off" an oleoresin capsicum ("OC")[6] restriction since 2004. *Decl. of Anthony Goodsell* [#59-1] ¶ 13 (citing *Ex. B, Pittman OC Restrictions* [#59-3]).[7] As of the date of the incident underlying this lawsuit, i.e., May 23, 2022, he had most recently been removed from OC

---

[3] As Plaintiff has been told many times before, surreplies are not contemplated by the Federal Rules of Civil Procedure or the Local Rules of Practice. *See, e.g.*, *Pittman v. Long*, No. 23-cv-00291-PAB-KAS, 2024 WL 3925342, at *1 n.2 (D. Colo. Aug. 23, 2024). However, "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). "Material, for purposes of this framework, includes both new evidence and new legal arguments." *Id.* (internal quotation marks and citation omitted). Although the Court did not previously grant Plaintiff leave to file a Surreply, and although Plaintiff has not demonstrated that Defendants raised new arguments or provided new evidence in their Reply [#64], the Court nevertheless has considered the Surreply [#65] in its adjudication of the present Motion [#59].

[4] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #18, #19]; *Reassignment* [#28].

[5] The Court notes that Plaintiff submitted no summary judgment evidence in connection with his Response [#63] or Surreply [#65]. Further, because Plaintiff "fail[ed] to properly address [Defendants'] assertion[s] of fact," the Court "consider[s] the fact[s] undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1122 (D. Kan. 2020) (concluding that "because plaintiff has controverted none of defendants' facts, the court can consider those facts undisputed for purposes of summary judgment"), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021).

[6] *See Gargan v. Gabriel*, 50 F. App'x 920, 922 (10th Cir. 2002) (noting that oleoresin capsicum is "commonly known as pepper spray").

[7] Mr. Goodsell is employed by CDOC as a Health Services Administrator for Centennial Correctional Facility ("CCF"). *Decl. of Goodsell* [#59-1] ¶ 1. As part of his job, he "review[s] the medical records of offenders who are housed at CCF." *Id.* ¶ 3.

restriction on October 8, 2020, and thus was not on OC restriction on May 23, 2022. *Id.* (citing *Ex. B, Pittman OC Restrictions* [#59-3]).

On May 23, 2022, Plaintiff, while in his cell with the door closed, refused a medical directive to submit to a tuberculosis test, including multiple directives from Defendant Roetker to comply with the medical directive. *Decl. of Tiffany Vogan* [#59-4] ¶ 6; *Ex. C, Bodycam Footage* at 0:00:53-0:01:40.[8] After these refusals, Plaintiff further refused a direct order from a correctional officer on the forced cell extraction team to voluntarily submit to wrist restraints. *Decl. of Vogan* [#59-4] ¶ 7; *Ex. C* at 0:01:49-0:01:55. To obtain Plaintiff's compliance with the medical directive and wrist restraint directive, Defendant Molello introduced a single burst of OC spray through a small opening in Plaintiff's cell door for approximately three seconds. *Decl. of Vogan* [#59-4] ¶ 8; *Ex. C* at 0:01:59-0:02:08. After the OC spray was utilized, Plaintiff decided to submit to the wrist restraints and comply with the medical directive, after which he was removed from his cell, and the tuberculosis test was administered without further problem. *Decl. of Vogan* [#59-4] ¶ 9; *Ex. C* at 0:02:44-0:04:14.

After the tuberculosis test was completed, Plaintiff was transferred to Intake for a strip search and decontamination shower, during which time he was compliant and not in any obvious medical distress; Plaintiff even voluntarily terminated early his decontamination shower. *Decl. of Vogan* [#59-4] ¶ 10; *Ex. C* at 0:04:15-0:17:03. After the decontamination shower, Plaintiff was clothed and transferred to a cell for direct observation without further incident. *Decl. of Vogan* [#59-4] ¶ 11; *Ex. C* at 0:17:04-0:20:00.

---

[8] Ms. Vogan is employed by CDOC as a Litigation Coordination for CCF. *Decl. of Vogan* [#59-4] ¶ 1. As part of her job, she "review[s] and maintain[s] use of force incident reports and body cam footage documenting all use of force incidents at CCF." *Id.* ¶ 3.

Plaintiff also received an anatomical evaluation from nursing staff. *Decl. of Vogan* [#59-4] ¶ 11.

In the present Motion [#59], Defendants seek dismissal of Plaintiff's sole remaining claim of excessive force under the Eighth Amendment against Defendants in their individual capacities for monetary damages. *See Order* [#32] at 22 n.11.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In determining whether summary judgment is appropriate, the Court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 79 F.4th 1185, 1195 (10th Cir. 2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted) (emphasis in original). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record," such as depositions, documents, affidavits, or declarations; or show that the cited materials "do not establish the absence or presence of a genuine dispute, or than an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Analysis

Defendants assert a qualified immunity defense. *Motion* [#59] at 9-10. Qualified immunity protects defendant officials from monetary damages when they are sued in their individual capacities. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). This affirmative defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to

show that the defendant's conduct (1) violated a statutory or constitutional right, which was (2) "clearly established" at the time of the conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022). "[C]learly established law must be 'particularized' to the facts of the case" and should not be defined "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). If the plaintiff fails to demonstrate either requirement, the court must grant the defendant qualified immunity and need not undertake additional analysis. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Under the Eighth Amendment, "[a]n excessive-force claim has two elements: (1) an objective element requiring that the alleged wrongdoing be harmful enough to establish a constitutional violation; and (2) a subjective element requiring the plaintiff to show that the officials acted with a sufficiently culpable state of mind." *Ezell v. Hininger*, No. 23-7007, 2024 WL 1109057, at *2 (10th Cir. Mar. 14, 2024) (citing *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)). "An official's state of mind is sufficiently culpable 'if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Redmond*, 882 F.3d at 936) (internal quotation marks omitted).

The use of OC/pepper spray is not per se unconstitutional. "The use of pepper spray 'constitutes a significant degree of force' and can in certain cases form the basis of a constitutional violation." *Quinones v. Rollison*, No. 18 Civ. 1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010)). However, in many instances, the use of OC spray is permissible to coerce

compliance with lawful orders. *Compare Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007) (holding that the officers' use of pepper spray was not unreasonable where the plaintiff refused to obey repeated officer instructions to exit her car during a fifty-minute standoff) *and Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) (finding that a prison official's use of pepper spray to subdue the prisoner-plaintiff during an altercation with another prisoner did not amount to an excessive force claim) *with DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (stating that a prison official would act maliciously and sadistically by indiscriminately spraying pepper spray along a prison tier as a practical joke); *see also Lehman v. McKinnon*, No. 18-cv-00952-PAB-NRN, 2020 WL 6119537, at *4 (D. Colo. July 7, 2020) (collecting pepper spray cases in the Eighth Amendment context).

In *Gargan v. Gabriel*, 50 F. App'x 920, 923 (10th Cir. 2002), the Tenth Circuit Court of Appeals held in an unpublished case that the use of four cans of OC spray on a prisoner who was unarmed, alone, and secure in a segregation cell during a cell extraction by defendants who had knowledge of the plaintiff's medical condition, i.e., chronic heart disease, did not constitute a violation of his Eighth Amendment right to be free from excessive force. The Circuit Court stated that, "[i]n order to state a claim for excessive use of force, [the plaintiff] must show the defendants 'acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline.'" *Gargan*, 50 F. App'x at 923 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996)). The Circuit Court further noted that "[t]his standard is appropriate 'regardless of whether the corrections officers are quelling a prison disturbance or merely trying to maintain order.'" *Id.* (quoting *Mitchell*, 80 F.3d at 1440

(quotation marks and citation omitted)). In affirming the district court's holding that the plaintiff's claim based on the purported use of excessive force failed, the Circuit Court observed the absence of "facts sufficient to support a reliable inference that pepper spray was used on [the plaintiff] unnecessarily, excessively, or wantonly. There are simply no facts at all discussing the need, or lack thereof, to use pepper spray in extracting [the plaintiff] from his cell." *Id.*

"To determine whether prison officials applied force maliciously and sadistically or, rather, in good faith, [a court] consider[s] (1) the need for the force, and (2) whether the officers used a disproportionate amount of force." *Redmond*, 882 F.3d at 937. Here, there was a clear need for force given that Plaintiff was refusing to obey direct orders given multiple times. "[P]risoners cannot be permitted to decide which orders they will obey, and when they will obey them." *Redmond*, 882 F.3d at 938 (citation and internal quotation marks omitted). The undisputed evidence also demonstrates that Plaintiff was not on OC restriction on the date of the forced cell extraction and that a single burst lasting approximately three seconds was used by Defendants. In light of this evidence, the Court finds that there is no genuine issue of material fact regarding whether Defendants applied force on Plaintiff, through the use of the OC spray, in a malicious or sadistic manner.

Further case law supports this finding. In *Thompson v. Orunsolu*, 798 F. App'x 288, 291-92 (10th Cir. 2020), the Tenth Circuit Court of Appeals affirmed entry of summary judgment in favor of a defendant correctional officer on an Eighth Amendment excessive-force claim where the officer had deployed a two-to-three second burst of mace into the plaintiff-inmate's cell in a good-faith effort to restore discipline based on the plaintiff's cellmate's actions, even though the spray caused the plaintiff to fall and injure his back.

In *Johnson v. Aucoin*, No. 18-cv-00194-RBJ-NRN, 2020 WL 5016912, at *1, 6 (D. Colo. Aug. 24, 2020), summary judgment was entered in favor of a defendant correctional officer on an Eighth Amendment excessive-force claim where the officer deployed OC spray multiple times for three seconds each during a forced cell extraction after the plaintiff inmate had attempted assault on staff and then repeatedly continued to disobey orders, even after the first deployment of OC spray. In both cases, like here, there was no genuine issue of material fact as to whether the officer had used force on the inmate in a sadistic or malicious manner.

In light of these cases and the undisputed evidence, the Court finds that Plaintiff has not shown that a genuine issue of material fact exists concerning the use of force by Defendants Roetker and Molello. In short, the Court finds that no reasonable jury could decide that Defendants Roetker and Molello maliciously and sadistically engaged in excessive force. *See Redmond*, 882 F.3d at 936 (noting that an official's state of mind is sufficiently culpable only "if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline") (internal quotation marks and citation omitted).

However, even assuming that Plaintiff had adequately alleged an excessive force claim, the Court finds that his claim against these Defendants fails to meet the second prong of the qualified immunity analysis, i.e., that there was a clearly established statutory or constitutional right that was violated on May 23, 2022, the date of the cell extraction. "To establish that the law was clearly established . . . , the plaintiff must point to Supreme Court or [published] Tenth Circuit precedents [o]n point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains." *Thompson*

*v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022); *see also George v. Beaver County*, 32 F.4th 1246, 1258 (10th Cir. 2022) (noting that the right must be clearly established "in light of the specific context of the case, not as a broad general proposition") (internal quotation marks and citation omitted).

Plaintiff cites to a single case, *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), in support of his opposition to summary judgment. *Response* [#63] at 2. That case, however, involved an inmate who received minor bruises, facial swelling, loosened teeth, and a cracked dental plate from a beating by correctional officers while he was shackled and handcuffed and after an argument with one of the officers, while a supervisor watched the beating but only told the officers "not to have too much fun." *Hudson*, 503 U.S. at 4. The circumstances of Plaintiff's case are significantly different, given the undisputed evidence that Plaintiff had refused to comply with multiple directives and had to be forced from his cell by use of OC spray. Additionally, the Court has been unable to locate a case clearly establishing the right at issue in a similar context. Thus, Defendants are both entitled to qualified immunity.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that Defendants' Motion [#59] is **GRANTED**. Judgment shall enter in favor of Defendants and against Plaintiff on the sole remaining Eighth Amendment claim.

IT IS FURTHER **ORDERED** that Plaintiff's **Motion to Alter or Amend Request for Relief** [#53] is **DENIED as moot**.[9]

---

[9] Plaintiff's requested amended relief consisted of a declaration that his rights had been violated and amendments to the types of monetary relief he sought.

- 11 -

IT IS FURTHER **ORDERED** that the joint Final Pretrial Conference and Trial Preparation Conference set for April 11, 2025, at 1:30 p.m. is **VACATED**.

IT IS FURTHER **ORDERED** that the five-day Jury Trial set for June 2-6, 2025, is **VACATED**.

IT IS FURTHER **ORDERED** that, after judgment is entered, the Clerk of Court shall **CLOSE** this case.

Dated: March 7, 2025　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　Kathryn A. Starnella
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge